IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DAVID VALDIVIA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | No. 07-2467-KHV |
| BNSF RAILWAY COMPANY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM AND ORDER**

David Valdivia sues BNSF Railway Company ("BNSF") for violation of the Family and Medical Leave Act ("FMLA"), 19 U.S.C. § 2615(a). This matter comes before the Court on Defendant BNSF Railway Company's Motion For Summary Judgment ("Defendant's Motion") (Doc. #42) filed July 18, 2008, Plaintiff David Valdivia's Motion For Summary Judgment (Doc. #44) filed July 18, 2008 and BNSF Railway Company's Motion To Strike Portions Of John May, M.D.'s Declaration ("Motion To Strike") (Doc. #50) filed August 12, 2008. For reasons stated below, the Court sustains in part defendant's motion for summary judgment and overrules the other motions.

**I.   Legal Standards**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, Okla., 942 F.2d 737, 743 (10th Cir. 1991). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which [she] carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on her pleadings but must set forth specific facts. Applied Genetics, 912 F.2d at 1241.

"[W]e must view the record in a light most favorable to the [party] opposing the motion for summary judgment." Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative. Anderson, 477 U.S. at 250-51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

**II.    Facts**

The following facts are either undisputed or where disputed, each party's contention is

noted.[1]

Since 2003, plaintiff has worked as an inbound electrician for BNSF at its Argentine Locomotive Maintenance and Inspection Terminal ("LMIT") in Kansas City, Kansas.[2] The Argentine LMIT is divided into two shops. One shop, known as the GE side, services locomotive manufactured by General Electric ("GE"). The other shop, known as the BNSF side, services locomotives manufactured by non-GE entities. Plaintiff works on the GE side. Plaintiff is a BSNF employee, but GE employs his direct supervisor, who is also known as a technical director ("TD"). The GE TD assigns and directs plaintiff's work but is not responsible for disciplining him.

BNSF is responsible for enforcing rules and regulations with respect to its employees. Rule 28.14 of the Mechanical Safety Rules and Policies requires that "[e]mployees must report for duty at the designated time and place with necessary equipment to perform their duties . . . . [and] [e]mployees must not be absent from duty without proper authority." Exhibit 2 to Valdivia Depo, Exhibit B to Defendant's Motion (Doc. #42). BNSF makes all decisions regarding attendance issues, including those which involve FMLA leave.

A collective bargaining agreement ("CBA") between BNSF and the International Brotherhood of Electrical Workers union ("IBEW") governs plaintiff's employment. Under the CBA, BNSF must hold an investigation before it can discipline an employee.[3]

---

[1] The Court considers only those facts which the parties include in numbered fact paragraphs pursuant to D. Kan. Rule 56.1. The Court does not consider facts which the parties include elsewhere in their briefs or facts which the record does not support.

[2] In 1992, plaintiff began working for the Atchison, Topeka and Santa Fe Railroad ("ATSF"). In 1995, ATSF merged with Burlington Northern to become BNSF.

[3] In an investigation, BNSF determines facts and circumstances surrounding an alleged infraction. BNSF conducts the investigation in the presence of the employee and a union
(continued...)

In 2002, Dr. John Joseph May diagnosed plaintiff with migraine headaches and prescribed medication. In addition to taking medication, plaintiff treated his migraines by going into a dark room, closing all doors and lying down to go to sleep.

In 2005, Dr. May prescribed Maxalt to treat plaintiff's migraine headaches. When plaintiff takes Maxalt, he sometimes experiences grogginess or a "hangover effect." Within 20 to 60 minutes of taking the drug, plaintiff typically falls asleep.[4] On occasion, plaintiff has slept for 24 to 27 hours after taking the drug. The medication does not usually cause plaintiff to sleep so long, however, and he ordinarily is able to awaken normally. When plaintiff takes Maxalt on a day when he is scheduled to work at night, he either arranges for his wife to wake him up or sets the alarm clock to wake him up before the beginning of his shift. Using this procedure, plaintiff can usually wake up in time to go to work or, if his symptoms persist, call in and request FMLA leave before the start of his shift.

For the period from March 9, 2006 through March 8, 2007, BNSF certified plaintiff for

---

[3](...continued)
representative.

[4] In support of his motion for summary judgment, plaintiff presents a declaration by Dr. May which states that Maxalt can sometimes cause people to sleep more soundly than they otherwise would. See Brief In Support Of Plaintiff David Valdivia's Motion For Summary Judgment ("Plaintiff's Brief") (Doc. #45) filed July 18, 2008 ¶ 7 (citing Declaration of Dr. John Joseph May ¶ 10). Defendant objects to certain portions of Dr. May's declaration on grounds that it contains expert opinion and plaintiff did not designate Dr. May as an expert witness. See Motion To Strike (Doc. #50). As an initial matter, it appears that paragraphs to which defendant objects are not the paragraph(s) upon which plaintiff relies. Defendant objects to paragraphs 4-9 and 12, but in his statement of facts, plaintiff cites only paragraph 10 of the declaration. See Plaintiff's Brief (Doc. #45) ¶ 7 (citing Declaration of Dr. May ¶ 10). Moreover, the portion of Dr. May's declaration upon which plaintiff relies is not material to the Court's ruling herein. Accordingly, the Court overrules as moot defendant's motion to strike Dr. May's declaration.

intermittent FMLA leave for migraine headaches.[5]  In so doing, BNSF notified plaintiff as follows: "In order for absences for this reason to be designated as FMLA, you must call in to report that you will not be able to work that day and you must advise that it will be an FMLA day."  Valdivia Depo. Exhibit No. 16, Exhibit B to Defendant's Motion (Doc. #42).  Plaintiff understood this procedure and followed it on many occasions.  Specifically, on occasion, plaintiff took Maxalt to treat a migraine headache and called in prior to his shift to report that he would not be at work.

On August 19, 2006, plaintiff worked the midnight shift (midnight to 8:00 a.m.).  Afterwards, plaintiff headed home and felt the onset of a migraine headache.  At home, plaintiff took Maxalt to treat his symptoms.  After taking the medicine, plaintiff set his alarm clock for 11:00 p.m. and went to sleep.[6]  Plaintiff was scheduled to work the following midnight shift and intended to either go to work or call in before the shift to report that he would miss work due to a migraine headache.  The alarm clock, however, did not wake him up.[7]

---

[5]   Defendant contends that in connection with requesting FMLA leave, plaintiff reported to Dr. May that to recover from a migraine headache, he needed one to two days.  See Defendant BNSF Railway Company's Memorandum In Support Of Its Motion For Summary Judgment ("Defendant's Memorandum") (Doc. #43) filed July 18, 2008 ¶ 22.  Plaintiff objects that the record citation does not support defendant's contention.  See Plaintiff David Valdivia's Response And Supporting Brief In Opposition To Defendant BNSF Railway Company's Motion For Summary Judgment ("Plaintiff's Opposition") (Doc. #48) filed August 6, 2008 ¶5.  The Court need not resolve the issue because it is not material to the ruling herein.

[6]   Plaintiff may have awakened and taken a second dose of Maxalt.  In his deposition, plaintiff testified that he could not remember what time he took the medicine or whether he took a second dose.  See Valdivia Depo. at 162:9-19, Exhibit B to Defendant's Motion (Doc. #42).  During the company's formal investigation, plaintiff stated that took one dose at 9:00 a.m. and a second dose at 2:00 p.m.  See Transcript of Investigation held 9/8/2006 at 26, 28-29, Exhibit 19 to Valdivia Depo.  The record does not reveal whether plaintiff has taken two doses of the medicine on other occasions.

[7]   Plaintiff's wife was not at home that day.  Other than setting his alarm clock, plaintiff did not arrange for any other plan to wake up before his shift.

5

The next thing which plaintiff recalls is waking up to a phone call from Darrell Patterson, his IBEW representative, at 8:00 a.m. the next morning (Sunday, August 20). Patterson told plaintiff that he had missed his shift and asked what happened. Plaintiff explained that he had taken medication and slept through the shift.

After talking with Patterson, plaintiff immediately telephoned work and sought FMLA leave from Earl Bunce, BNSF general foreman.[8] Bunce said that he could not grant FMLA leave because plaintiff called in after the shift ended and was therefore considered absent without authority ("AWOL") for eight hours. Bunce stated that he would forward the request to Dennis Bossolono, shop superintendent.[9] Bunce thereafter notified higher-level BNSF managers that plaintiff sought FMLA leave for the shift on August 20.

Meanwhile, Patterson relayed plaintiff's story to John Cashman, plaintiff's direct supervisor, i.e. the GE TD. Cashman thereafter entered into the BNSF timekeeping system that plaintiff's absence was covered by FMLA. As GE TD, Cashman could make entries in the timekeeping system, but he was not authorized to grant or deny FMLA leave. The next day, John Reppond, BNSF general foreman, changed the time entries to reflect that plaintiff was AWOL for the midnight shift on August 20.[10]

On August 22, 2006, BNSF notified plaintiff that it was initiating a formal investigation into his failure to report to work on August 20. The notice stated as follows:

---

[8] As general foreman, Bunce had authority to determine whether an absence is approved under the FMLA.

[9] As shop superintendent, Bossolono bore overall responsibility for the Argentine LMIT.

[10] An initial entry of AWOL is subject to change depending upon facts and circumstances determined in any subsequent investigation.

6

> Please report to the office of the Shop Superintendent . . . on Friday, September 8, 2006 at 8:30 AM, for the purpose of ascertaining the facts and determining responsibility, if any, in connection with your alleged violation of Rule S-28.14 Duty – Reporting or Absence from the BNSF Mechanical/P&M Safety Rules and Policies . . . .
>
> On Saturday August 19, 2006, (actual date August 20) on the third shift, 00:00 hours until 8:00 hours, you allegedly failed to report for duty and allegedly did not phone the Shop Planner until 08:30 hours on August 20, 2006, and you allegedly were absent without proper authority (AWOL) from 00:00 hours until 8:00 hours on August 19, 2006, (actual date August 20).
>
> Arrange for representative and/or witnesses, if desired, in accordance with governing provisions of prevailing schedule rules.

Valdivia Depo. Exhibit 18, Exhibit 8 to Plaintiff's Brief (Doc. #45).

On September 8, 2006, BNSF conducted a formal investigation. At the investigation, plaintiff testified to the following facts: Since 2004, plaintiff has been treated for migraine headaches. His prescription medicines normally knock him out completely. Within ten minutes of taking the medicine, he is usually sound asleep. At times, because of medication, he has slept more than 26 or 27 hours. On the morning of August 19, 2006, plaintiff felt a migraine headache coming on. Around 9:00 a.m., he took medicine and fell asleep. Around 2:00 p.m., he woke up and took more medicine. He fell asleep until the next morning, when Patterson called him. After speaking with Patterson, plaintiff called into work and spoke with Bunce. Plaintiff told Bunce what had happened and requested FMLA leave. Bunce replied that he would have to run the request by Bossolono. Plaintiff did not call in to work prior to the start of his shift at midnight on August 20, 2006. Plaintiff missed his entire shift on August 20, 2006. No one at BSNF granted plaintiff permission to be absent from his assigned duties on August 20, 2006. Plaintiff understood Rule S-28.14 and agreed that he did not comply with that rule.

As a result of the investigation, BNSF determined that on August 20, 2006, plaintiff was

absent without authority in violation of BNSF policy regarding failure to report to work. Specifically, Mark Hofmann, assistant shop superintendent, determined that plaintiff was not entitled to FMLA leave because he did not provide advance notice of his need for leave. Hofmann reasoned that although plaintiff knew that his migraine medicine could knock him out for up to 27 hours straight, he took the medicine twice (in the morning and afternoon) before his shift on August 20. Hofmann reasoned that plaintiff had the opportunity to call in and inform BNSF that he would not be at work due to a migraine, but chose not to do so. As a result of the findings, BNSF imposed a record suspension of 20 days and a probation period of one year.[11] BNSF placed notice of the discipline in plaintiff's personnel record.

The parties dispute whether plaintiff suffered negative consequences as a result of the discipline. In his deposition, plaintiff testified that he is not aware of any negative action by BNSF as a result of the record suspension and probation period.[12] When an employee's personnel record contains a record suspension, BNSF's practice is to treat the suspension as a previous infraction for purposes for future discipline against the employee. On October 23, 2006, BNSF disciplined plaintiff regarding another incident at work. In imposing discipline, BNSF considered plaintiff's personnel record.

Plaintiff knew that if he was going miss a shift, BNSF policy required him to call in before

---

[11] The union appealed the discipline to a public law board. The public law board denied the appeal and affirmed the BNSF action.

[12] The record does not explain what a record suspension is. In his deposition, plaintiff testified that a record suspension is a suspension for the record which does not result in time off work or lost pay. See Valdivia Depo. at 191:17-21. Plaintiff testified that he considered the effect of a record suspension to be serious, in that it "goes in your record" and "could possibly put you closer to any other violation that occurs and possibly get you terminated." Id. at 191:22-192:2.

the beginning of the shift. Plaintiff knew that if he did not call in before the shift, BNSF could consider him AWOL from the beginning of his shift until the time he called in.

Under the BNSF FMLA policy, employees must notify BNSF of an unexpected absence as soon as practicable and failure to request leave in a timely manner may result in the leave not being deemed FMLA leave. Plaintiff was aware of this policy. Plaintiff understood that if he needed to miss work due to a migraine, he was to call in before his shift began and advise that he needed a FMLA day. Plaintiff understood that if he did not call in before his shift, he would be subject to discipline.

### III.    Analysis

Plaintiff claims that by denying him FMLA leave and disciplining him for missing his shift on August 20, defendant interfered with his rights under the FMLA. Plaintiff also claims that in disciplining him for missing the shift, defendant retaliated against him in violation of the FMLA. Defendant contends that as a matter of law, plaintiff cannot establish the elements of his interference and retaliation claims. Defendant also asserts that plaintiff has not properly preserved a retaliation claim. Plaintiff and defendant each seek summary judgment on all claims.

### A.    FMLA Interference Claim

Plaintiff claims that defendant interfered with his FMLA rights by (1) denying him FMLA leave for the shift on August 20 and (2) disciplining him for missing that shift.

The FMLA guarantees eligible employees substantive rights of up to 12 weeks of unpaid leave for serious health conditions and reinstatement to their former position or an equivalent position upon return from that leave. See 29 U.S.C. §§ 2612(a)(1), 2614(a). Under Section 2615(a)(1), an employer may not interfere with, restrain or deny the exercise of or the attempt to

exercise any rights under the FMLA. See 29 U.S.C. § 2615(a)(1). To prevail on an FMLA interference claim, plaintiff must show that (1) he was entitled to FMLA leave; (2) defendant took adverse action which interfered with his right to take FMLA leave; and (3) defendant's action was related to the exercise or attempted exercise of his FMLA rights. See Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1180 (10th Cir. 2006). Under this theory, defendant's intent is irrelevant and the McDonnell Douglas burden-shifting analysis does not apply. See id. (citing Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 877 (10th Cir. 2004) and Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 963 (10th Cir. 2002)). Defendant asserts that as a matter of law, plaintiff cannot meet the first and third elements of an FMLA interference claim. Plaintiff contends that as a matter of law, defendant is liable for FMLA interference.

### 1. Whether Plaintiff Was Entitled To FMLA Leave

Defendant asserts that as a matter of law, plaintiff was not entitled to FMLA leave because he did not give notice of his need for leave before his shift began.[13] Defendant asserts that plaintiff knew that (1) defendant required advance notice of FMLA leave; (2) his medicine could knock him out for up to 27 hours at a time; and (3) it was likely that he would not be able to work the midnight shift. Defendant contends that as a matter of law, plaintiff should have called in when he took the medicine and that by not doing so, plaintiff knowingly disregarded his responsibility to provide advance notice of his need for FMLA leave. See Defendant's Memorandum (Doc. #43) at 20.

Plaintiff responds that because his need for leave was unforeseeable, the FMLA does not

---

[13] For purposes of the present motions, defendant agrees that missing work for a migraine headache would have qualified plaintiff for FMLA leave had he provided advance notice of his need for the leave.

require him to give advance notice. Regarding unforeseen need for FMLA leave, Department of Labor regulations provide that "[w]hen the approximate timing of the need for leave is not foreseeable, an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303.[14] This regulation is consistent with BNSF policy, which provides that in the event of an unexpected absence, an employee must notify BNSF of the need for FMLA leave as soon as practicable.

The analysis on this issue boils down to whether the need for FMLA leave was foreseeable at the time plaintiff took his medication, and, if so, whether plaintiff gave notice as soon as practicable under the facts and circumstances of this case. See id. Defendant contends that as a matter of law, at the time plaintiff took his medicine, he should have foreseen the need for FMLA leave and called in to work. Plaintiff, on the other hand, contends that the need for leave was not foreseeable and that he gave notice as soon practicable by calling in to work as soon as he woke up. Viewed in a light most favorable to plaintiff, the record presents a genuine issue of material fact in this regard. Plaintiff testified that in the past, after taking the medicine, he set his alarm clock and successfully wakened to either go in to work or call in before the beginning of his shift. Based on this evidence, a fact finder could reasonably conclude that at the time plaintiff took his medicine, the need for leave was not foreseeable and that by calling in to work as soon as he woke up, plaintiff gave notice of his need for FMLA leave as soon as practicable under the circumstances. Defendant is not entitled to summary judgment on this ground.

---

[14] Section 825.303 further provides that "[i]t is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible." Id.
Regarding foreseen leave, the FMLA requires 30 days advance notice or, if the need for leave will arise in less than 30 days, "such notice as is practicable." 29 U.S.C. § 2612(e)(1).

11

Plaintiff asserts that as a matter of law, his need for FMLA leave was unforeseeable and he provided notice as soon as practicable under the circumstances. As discussed above, the evidence presents a genuine issue of material fact in this regard. Defendant points to evidence that plaintiff knew that the medicine could knock him out and that his wife was not at home to wake him up. Viewed in a light most favorable to defendant, a reasonable fact finder could conclude that at the time plaintiff took his medication, he should have foreseen the need for FMLA leave and called in to work. Plaintiff is not entitled to summary judgment on the FMLA interference claim.[15]

### 2. Whether Defendant's Action Was Related To The Exercise Or Attempted Exercise Of FMLA Rights

Defendant asserts that as a matter of law, plaintiff cannot establish the third element of an interference claim, i.e. that its action was related to the exercise or attempted exercise of FMLA rights. Specifically, defendant argues that regardless whether plaintiff requested FMLA leave, it would have disciplined him under its rules for being absent without proper authority. See Defendant's Memorandum (Doc. #43) at 22-24. This argument misses the boat. As discussed above, the evidence presents a genuine issue of material fact whether plaintiff was entitled to FMLA leave for the shift on August 20. If so, defendant interfered with such right by refusing FMLA leave and disciplining him for missing the shift. Defendant is not entitled to summary judgment on this ground.

### B. FMLA Retaliation Claim

---

[15] Plaintiff contends that the Court must analyze the issue of proper notice under the FMLA separately from the substantive interference claim, i.e. as an affirmative defense. See Plaintiff's Brief (Doc. #45) at 20-21 (citing Bones, 366 F.3d at 877 n.2; Henderson v. Whirlpool Corp., 17 F. Supp.2d 1238, 1246 (N.D. Okla. 1998)). The Court need not decide the issue at this time. Regardless who bears the burden of proof, a genuine issue of material fact precludes summary judgment.

Plaintiff contends that because he requested and/or took FMLA-protected leave for the August 20 shift, defendant retaliated by disciplining him for missing the shift. Defendant asserts that as a matter of law (1) plaintiff did not properly preserve a retaliation claim; and (2) with regard to the merits of any retaliation claim, plaintiff cannot establish a prima facie case or pretext. Plaintiff asserts that the evidence demonstrates as a matter of law that he is entitled to judgment on the retaliation claim.

### 1. Whether Plaintiff Preserved Retaliation Claim

Defendant contends that plaintiff has not properly preserved a claim for FMLA retaliation. Specifically, defendant contends that plaintiff raised the claim for the first time in the pretrial order and did not include the claim in his complaint.[16] In the complaint, plaintiff alleges facts and circumstances regarding plaintiff's migraine headaches, missing the shift on August 20 and the resulting discipline. See Complaint (Doc. #1) filed October 2, 2007 ¶¶ 6-13.[17] The complaint includes one section labeled "cause of action," which states as follows:

> 26. The FMLA entitles an eligible employee who is certified for FMLA leave for a serious health condition to take up to twelve workweeks of leave for that serious health condition during any 12-month period.
>
> 27. The FMLA entitles an eligible employee who is certified for FMLA leave for a serious health condition to take FMLA leave for his serious health condition intermittently.
>
> 28. The FMLA regulations issued by the Department of Labor provide that, where

---

[16] In the pretrial order, plaintiff's retaliation claim is qualified by a footnote regarding defendant's objection thereto. See Pretrial Order (Doc. #41) filed July 15, 2008 at 6. The footnote states, in part, as follows: "Judge O'Hara declined to make what would amount to a dispositive ruling on this issue during the pretrial conference. Defendant may pursue this issue by way of its anticipated motion for summary judgment . . . ." Id. at n.1.

[17] Another plaintiff, Mark Kelly, initially joined in the complaint. See id. On March 18, 2008, the parties stipulated to dismissal of Kelly's claims with prejudice. See Doc. #20.

>the need for FMLA leave is unforeseeable, an employee should give notice of the need for leave as soon as practicable under the facts and circumstances of the particular case. The regulations further provide that, where the need for leave is unforeseeable, the employee generally should give notice within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible.
>
>29. An employer violates the FMLA and acts unlawfully when it interferes with, restrains, or denies the right of an employee to exercise his FMLA rights.
>
>30. By refusing [plaintiff's request] for FMLA leave for absence[] caused by the serious health condition[] for which [he was] certified, BNSF violated the FMLA and acted unlawfully.
>
>31. By disciplining [plaintiff] for absence[] that [was] caused by the serious health condition[] for which [he was] certified and for which plaintiff[] had requested FMLA leave, BNSF violated the FMLA and acted unlawfully.

Id. at 5-6.

The notice pleading requirements of Rule 8, Fed. R. Civ. P., require only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to give defendant "fair notice" of what the claim is and the grounds upon which it rests. See Bell Atl. Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1964 (2007). The complaint need not contain detailed factual allegations, but it must contain factual allegations sufficient to raise a right to relief above the speculative level. See id. Here, the underlying facts are the same for both the FMLA interference claim and the FMLA retaliation claim. While plaintiff could have better drafted the complaint to clarify that he was asserting both claims, the complaint is sufficient to notify defendant of the retaliation claim. Specifically, in paragraph 31 of the complaint, plaintiff alleges that defendant violated the FMLA and acted unlawfully by disciplining him for an FMLA absence for which he had requested FMLA leave. See id. ¶ 31. Read broadly, the language of this paragraph sufficiently encompasses an FMLA retaliation claim.

14

Defendant asserts that plaintiff did not properly preserve a retaliation claim in his answers to interrogatories. As an initial matter, defendant cites no authority to support its proposition that plaintiff can waive a claim by not including it in answers to interrogatories. Moreover, as to the interrogatory answers which defendant cites, the interrogatory questions did not ask plaintiff to identify his claims. See Defendant's Memorandum (Doc. #43) at 24-25.[18] On this record, defendant has not shown that through his interrogatory answers, plaintiff has waived his retaliation claim.

Even if the complaint did not allege a retaliation claim, the Court would allow it in this case. A plaintiff's attempt to add a new claim to the pretrial order is equivalent to asking leave to amend the complaint, which the Court evaluates under Rule 15(a), Fed. R. Civ. P. See C.T. v. Liberal Sch. Dist., 562 F. Supp.2d 1324, 1332 n.5 (D. Kan. 2008). Under Rule 15(a), the Court freely grants leave to amend when justice so requires. See Rule 15(a)(2). The underlying purpose of the rule is to provide litigants "the maximum opportunity for each claim to be decided on the merits rather than on procedural niceties." Minter v. Prime Equip. Co., 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting Hardin v. Manitowoc-Forsythe Corp., 691 F.2d 449, 456 (10th Cir. 1982)). In determining whether to allow an amendment, the Court looks to whether plaintiff unduly delayed his request and, most importantly, whether defendant will suffer undue prejudice as a result thereof. See id. at 1205-11. Here, the complaint contains the underlying facts for the retaliation claim, and it appears that plaintiff believed that his broad allegations regarding unlawful practices under the FMLA included a retaliation claim. Moreover, defendant identifies no prejudice which will occur as a result of

---

[18] Interrogatory 8 asked plaintiff to identify who had engaged in unlawful employment practices. Interrogatory 13 asked plaintiff to identify the regulations and violations referred to in paragraph 28 of the complaint. Interrogatory 14 asked plaintiff to describe the details of the interference, restraint and denial referred to in paragraph 19 of the complaint. See Exhibit A to Defendant's Motion (Doc. #42) at 7, 11-12.

allowing the amendment. In these circumstances, even if plaintiff did not properly allege a retaliation claim in the complaint, the Court would allow him to add it as a claim in the pretrial order.

### 2. Merits Of Retaliation Claim

Defendant asserts that with regard to retaliation, plaintiff cannot establish a prima facie case or pretext. The burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies to FMLA retaliation claims. Under this analysis, plaintiff bears the initial burden to make a prima facie showing of retaliation. See id. at 802. If plaintiff establishes a prima facie case, the burden shifts to defendant to articulate a facially nondiscriminatory reason for its actions. See Reynolds v. Sch. Dist. No. 1, Denver, Colo., 69 F.3d 1523, 1533 (10th Cir. 1995). If defendant articulates a legitimate nondiscriminatory reason, the burden shifts back to plaintiff to present evidence from which a reasonable jury might conclude that defendant's proffered reason is pretextual, that is, "unworthy of belief." Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1165 (10th Cir. 1998) (quoting Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995)).

Defendant asserts that plaintiff cannot establish a prima facie case of retaliation. To establish a prima facie case, plaintiff must show that (1) he engaged in protected activity; (2) defendant took action which a reasonable employee would find materially adverse; and (3) a causal connection exists between the protected activity and the adverse action. See Metzler, 464 F.3d at 1171. Defendant contends that plaintiff cannot establish the third element, i.e. that plaintiff cannot show a causal connection between his protected activity and the adverse action.[19] Plaintiff responds that

---

[19] Defendant does not clearly articulate which elements of a prima facie case that it contends plaintiff cannot establish. In its memorandum in support of summary judgment, defendant states as follows:

(continued...)

16

he can show a causal connection based on temporal proximity.

The Tenth Circuit has repeatedly recognized temporal proximity between protected conduct and adverse action as relevant evidence of a causal connection sufficient to "justify an inference of retaliatory motive." Metzler, 464 F.3d at 1171 (citation omitted). The Tenth Circuit has emphasized, however, that plaintiff may rely on temporal proximity alone only if the adverse action "is very closely connected in time to the protected activity." Id. (quoting Anderson v. Coors Brewing, Co., 181 F.3d 1171, 1179 (10th Cir. 1999)). Here, on August 20, 2006, plaintiff missed his shift and requested FMLA leave. Two days later, on August 22, 2006, defendant initiated a formal investigation into his failure to report to work. Within the next month, defendant conducted a formal investigation and disciplined plaintiff for the absence. On these facts, temporal proximity is sufficient to establish the third element of a prima facie case. See Metzler, 464 F.3d at 1172 (six weeks between protected activity and adverse action sufficiently close in time to establish third element of prima facie case).

Defendant asserts that it disciplined plaintiff because he did not give advance notice of his need for leave on August 20. Because defendant has articulated a legitimate nondiscriminatory

---

[19](...continued)
  The facts and circumstances surrounding Plaintiff's retaliation claim are the same as those allegedly begetting his interference claim. Pre-trial Order, ¶ 5(a), pp.4-5. The evidence shows that BNSF took no action against Plaintiff based on his request for FMLA leave. Rather, Plaintiff was disciplined as a result of his violation of BNSF's attendance rules and policies.

Defendant's Memorandum (Doc. #43) at 27. In its reply brief, defendant argues that plaintiff cannot establish a causal nexus between the discipline and his request for FMLA leave. See Defendant's Reply (Doc. #54) at 10. The Court construes defendant's arguments as challenging the third element of a prima facie case. In any event, on this record, plaintiff has presented evidence sufficient to establish the first two elements, i.e. that he engaged in protected activity (requested FMLA leave) and that defendant took action (imposed discipline) which a reasonable employee would find materially adverse.

reason for its action, the burden shifts to plaintiff to present evidence from which a reasonable jury might conclude that defendant's proffered reason is pretextual, that is, "unworthy of belief." Beaird, 145 F.3d at 1165 (quoting Randle, 69 F.3d at 451).

Defendant asserts that as a matter of law, plaintiff cannot show that its explanation for the discipline is pretextual. Plaintiff can show pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence." Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997) (quotations omitted). While "[t]his burden is not onerous . . . it is also not empty or perfunctory." Id. at 1323-24. A plaintiff typically makes a showing of pretext in one of three ways: (1) evidence that defendant's stated reason for the adverse employment action was false, i.e. unworthy of belief; (2) evidence that defendant acted contrary to a written company policy prescribing the action to be taken under the circumstances; or (3) evidence that defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision. See Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir. 2000).

Plaintiff asserts that the fact that defendant disciplined him for an FMLA-covered absence demonstrates that its explanation is pretextual. Specifically, plaintiff asserts that because he gave notice of his need for leave as soon as practicable, he complied with the FMLA and the BNSF FMLA policy. Plaintiff contends that by disciplining him for the absence, BNSF violated the FMLA and its own FMLA policy. Plaintiff's argument is not well taken. A genuine issue of fact exists regarding whether the FMLA protects plaintiff's absence. After investigating the facts, defendant determined that the FMLA did not apply because plaintiff should have foreseen his need for leave

and called into work before his shift began. The fact that plaintiff – or even a jury – may disagree with defendant's finding on this issue does not suggest that its explanation for the discipline is pretextual. See Stover v. Martinez, 382 F.3d 1064, 1076 (10th Cir. 2004) (relevant pretext inquiry not whether defendant's reasons were wise, fair or correct but whether defendant honestly believed reasons and acted in good faith). Plaintiff points to no evidence which suggests that defendant acted dishonestly or in bad faith. On this record, plaintiff has not presented a triable issue of fact regarding whether defendant's explanation for its action is pretextual. Defendant is entitled to summary judgment on plaintiff's FMLA retaliation claim.[20]

**IT IS THEREFORE ORDERED** that Defendant BNSF Railway Company's Motion For Summary Judgment (Doc. #42) filed July 18, 2008 be and hereby is **SUSTAINED in part.** Defendant is entitled to summary judgment on plaintiff's FMLA retaliation claim. The FMLA interference claim remains in the case.

**IT IS FURTHER ORDERED** that Plaintiff David Valdivia's Motion For Summary Judgment (Doc. #44) filed July 18, 2008 be and hereby is **OVERRULED.**

---

[20] Plaintiff asserts that as a matter of law, defendant is liable for retaliation. In support of this assertion, plaintiff argues that as a matter of law, the evidence establishes a prima facie case. See Plaintiff's Brief (Doc. #45) at 25-28. Plaintiff does not discuss defendant's stated reason for its action or evidence regarding pretext. See id. For reasons stated above, plaintiff is not entitled to summary judgment on the retaliation claim.

**IT IS FURTHER ORDERED** that BNSF Railway Company's Motion To Strike Portions Of John May, M.D.'s Declaration (Doc. #50) filed August 12, 2008 be and hereby is **OVERRULED as moot.**

Dated this 30th day of September, 2008 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge