## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DAVID VALDIVIA, ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | **CIVIL ACTION** |
| ) | **No. 07-2467-KHV** |
| BNSF RAILWAY COMPANY, ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

### MEMORANDUM AND ORDER

David Valdivia sues BNSF Railway Company ("BNSF") for violation of the Family and Medical Leave Act ("FMLA"), 19 U.S.C. § 2615(a). Plaintiff claims that by disciplining him for missing work when medication caused him to sleep through his shift, defendant unlawfully retaliated and interfered with his rights under the FMLA. On September 30, 2008, the Court sustained defendant's motion for summary judgment as to the retaliation claim. See Memorandum And Order (Doc. #56). After the summary judgment ruling, the parties stipulated that the only remaining issue was whether plaintiff's need for FMLA leave was foreseeable at the time he took his medication and, if so, whether plaintiff gave notice as soon as practicable under the facts and circumstances of this case. See Joint Stipulation Of The Parties As To Statements Of Fact And Conclusions Of Law And Sole Question Remaining For Trial ("Joint Stipulation") (Doc. #62) filed November 4, 2008. On December 11, 2008, by stipulation of the parties, the Court held a bench trial. For reasons set forth below, the Court rules in favor of defendant on plaintiff's FMLA interference claim.

### I.    Facts

Based on the parties' stipulation and the evidence presented at trial, the Court finds the following facts.

In 1992, plaintiff began working for the Atchison, Topeka and Santa Fe Railroad ("ATSF").

In 1995, ATSF merged with Burlington Northern to become BNSF.  Since 2003, plaintiff has worked as an inbound electrician for BNSF at its Argentine Locomotive Maintenance and Inspection Terminal ("LMIT") in Kansas City, Kansas.

The Argentine LMIT is divided into two shops.  One shop, known as the GE side, services locomotives manufactured by General Electric ("GE").  The other shop, known as the BNSF side, services locomotives manufactured by non-GE entities.  Plaintiff works on the GE side.  Plaintiff is a BNSF employee, but GE employs his direct supervisor, who is also known as a technical director ("TD").  The GE TD assigns and directs plaintiff's work but is not responsible for disciplining him.

BNSF is responsible for enforcing rules and regulations with respect to its employees. Rule 28.14 of the Mechanical Safety Rules and Policies requires that "[e]mployees must report for duty at the designated time and place with necessary equipment to perform their duties . . . [and] [e]mployees must not be absent from duty without proper authority."  BNSF makes all decisions regarding attendance issues, including those which involve FMLA leave.

Plaintiff's employment is governed by a collective bargaining agreement ("CBA") between BNSF and the International Brotherhood of Electrical Workers ("IBEW").  Under the CBA, BNSF must hold an investigation before it can discipline an employee.  In an investigation, BNSF determines facts and circumstances surrounding an alleged infraction.  BNSF conducts the investigation in the presence of the employee and a union representative.

In 2002, Dr. John Joseph May diagnosed plaintiff with migraine headaches and prescribed medication.  In addition to medication, plaintiff treated his migraines by going into a dark room, closing all doors and lying down to go to sleep.

In 2005, Dr. May prescribed Maxalt to treat plaintiff's migraine headaches. When plaintiff takes Maxalt, he sometimes experiences grogginess or a "hangover effect." Within 20 to 60 minutes of taking the drug, he typically falls asleep. Sometimes the medication causes him to fall into a completely relaxed and deep sleep. At times, while on medication, plaintiff has slept through his alarm.[1] On occasion, plaintiff has slept for 24 to 27 hours after taking the drug. The medication does not usually cause him to sleep so long, however, and ordinarily he is able to awaken normally. When plaintiff takes Maxalt on a day when he is scheduled to work later that night, he sets the alarm clock to wake him before the beginning of his shift. Also, family members wake him if they are home and see him sleeping.[2] Using this procedure, he can usually wake up in time to go to work or, if his symptoms persist, call in and request FMLA leave before the start of his shift.

From March 9, 2006 through March 8, 2007, BNSF certified plaintiff for intermittent FMLA leave for migraine headaches. In so doing, BNSF notified him as follows: "In order for absences for this reason to be designated as FMLA, you must call in to report that you will not be able to work that day and you must advise that it will be an FMLA day." Plaintiff understood this procedure and

---

[1]     Plaintiff's testimony is inconsistent regarding sleeping through the alarm. At trial, plaintiff testified that before August 19, 2006, he had never slept through his alarm. In his deposition, however, plaintiff testified that he had slept through his alarm while on medication. See Valdivia Depo. at 157:8-11. When asked whether he had slept through the alarm before August 19, plaintiff answered that he did not recall, but that he "could have." See id. at 157:12-21. At the company investigation, plaintiff stated that family members normally wake him up. See Plaintiff's Exhibit 11 at 24:2-3, 27:4-16, 29:4-12. At trial, plaintiff testified that although he does not take precautions to make sure that someone will be home, family members wake him if they are home and see him sleeping. Plaintiff's unwillingness or inability to consistently address this simple issue is baffling and detracts from his general credibility. Based on plaintiff's testimony, however, the Court finds that he had slept through his alarm before August 19.

[2]     Plaintiff is married and has three children (aged 20, 19 and 16). In 2006, plaintiff's wife and children lived at home. See id. at 8:5-9:19.

followed it on many occasions.  Specifically, on occasion, plaintiff took Maxalt to treat a migraine headache and called in prior to his shift to report that he would not be at work.

On August 19, 2006, plaintiff worked the midnight shift (midnight to 8:00 a.m.).  Afterwards, he headed home and felt the onset of a migraine headache.  Around 9:00 a.m., he took Maxalt, set his alarm for 11:00 p.m. (14 hours later) and went to sleep.  Plaintiff awakened around 2:00 p.m. and took a second dose of Maxalt.  Because plaintiff was scheduled to work again at midnight, he intended to either go to work or call in before midnight to report that he was going to take FMLA leave for his migraine headache.  Plaintiff knew that even a single dose of Maxalt could knock him out for up to 27 hours and that in the past, he had slept through his alarm while on medication.  Nevertheless, other than setting his alarm, he made no arrangement to wake up before his shift.[3]  The alarm clock did not waken plaintiff and he slept through his entire shift (18 hours).

At 8:00 a.m. on Sunday, August 20, plaintiff woke to a phone call from Darrell Patterson, his IBEW representative.  Patterson told plaintiff that he had missed his shift and asked what had happened.  Plaintiff explained that he had taken medication and had slept through the shift.

After talking with Patterson, plaintiff immediately telephoned work and sought FMLA leave from Earl Bunce, BNSF general foreman.  As general foreman, Bunce had authority to determine whether an absence was approved under the FMLA.  Bunce said that he could not grant FMLA leave because plaintiff had called in after the shift ended and was therefore considered absent without authority ("AWOL") for eight hours.  Bunce stated that he would forward the request to Dennis

---

[3]        Plaintiff testified that he expected that his wife would be home that evening and that she knows his work schedule and wakes him up if he is sleeping and needs to go to work.  Defendant did not tell his wife that he had taken the medicine, however, or ask her to wake him up.  She did not come home that evening and did not wake him up.

4

Bossolono, shop superintendent. As shop superintendent, Bossolono bore overall responsibility for the Argentine LMIT. Bunce thereafter notified higher level BNSF managers that plaintiff sought FMLA leave for the shift on August 20.

Meanwhile, Patterson relayed plaintiff's story to John Cashman, plaintiff's direct supervisor, i.e. the GE TD. Cashman thereafter noted in the BNSF timekeeping system that the FMLA covered plaintiff's absence. As GE TD, Cashman could make entries in the timekeeping system, but he was not authorized to grant or deny FMLA leave.

The next day, John Reppond, BNSF general foreman, changed the time entries to reflect that plaintiff was AWOL for the midnight shift on August 20. An initial entry of AWOL is subject to change depending upon facts and circumstances determined in any subsequent investigation.

On August 22, 2006, BNSF notified plaintiff that it was initiating a formal investigation into his failure to report on August 20. The notice stated as follows:

> Please report to the office of the Shop Superintendent . . . on Friday, September 8, 2006 at 8:30 AM, for the purpose of ascertaining the facts and determining responsibility, if any, in connection with your alleged violation of Rule S-28.14 Duty – Reporting or Absence from the BNSF Mechanical/P&M Safety Rules and Policies . . . .
>
> On Saturday August 19, 2006, (actual date August 20) on the third shift, 00:00 hours until 8:00 hours, you allegedly failed to report for duty and allegedly did not phone the Shop Planner until 08:30 hours on August 20, 2006, and you allegedly were absent without proper authority (AWOL) from 00:00 hours until 8:00 hours on August 19, 2006, (actual date August 20).
>
> Arrange for representative and/or witnesses, if desired, in accordance with governing provisions of prevailing schedule rules.

Joint Stipulation (Doc. #62) ¶ A(14).

On September 8, 2006, BNSF conducted a formal investigation. At the investigation, plaintiff testified to the following facts:  Since 2004, he has received treatment for migraine

5

headaches.  His prescription medicines normally knock him out completely.  Within ten minutes of taking the medicine, he is usually sound asleep.  At times, he has slept more than 26 or 27 hours because of medication.  On the morning of August 19, 2006, he felt a migraine headache coming on. Around 9:00 a.m., he took medicine and fell asleep.  Around 2:00 p.m., he woke up and took more medicine.  He fell asleep until the next morning, when Patterson called him.  Plaintiff did not call in to work prior to the start of his shift at midnight on August 20, 2006, and he missed that entire shift.  No one at BNSF had granted him permission to be absent.  Plaintiff understood Rule S-28.14 and agreed that he did not comply with it.

As a result of the investigation, BNSF determined that on August 20, 2006, plaintiff was absent without authority in violation of BNSF policy regarding failure to report to work.  Mark Hofmann, assistant shop superintendent, determined that plaintiff was not entitled to FMLA leave because he had not provided advance notice of his need for leave.  Hofmann reasoned that although plaintiff knew that his migraine medicine could knock him out for up to 27 hours straight, he took the medicine twice (in the morning and afternoon) before his shift on August 20; that plaintiff had the opportunity to call in and inform BNSF that he would not be at work due to a migraine; and that plaintiff chose not to do so.

As a result of the findings, BNSF imposed a record suspension of 20 days and a probation period of one year.  BNSF placed notice of the discipline in plaintiff's personnel record.

The union appealed the discipline to a public law board.  The public law board denied the appeal and affirmed the BNSF action.

When an employee's personnel record contains a record suspension, BNSF's practice is to treat the suspension as a previous infraction for purposes of future discipline.  On October 23, 2006,

BNSF disciplined plaintiff for another incident.  In imposing discipline, BNSF considered his personnel record.

Plaintiff knew that if he was going miss a shift, BNSF policy required him to call in before the beginning of the shift.  He knew that if he did not do so, BNSF could consider him AWOL from the beginning of his shift until the time he called in. Under BNSF policy, employees must notify BNSF of an unexpected FMLA absence as soon as practicable and failure to request leave in a timely manner may result in denial of FMLA leave.  Plaintiff was aware of this policy.  He understood that if he needed to miss work due to a migraine, he had to call in before his shift began and advise that he needed FMLA leave.  He understood that if he did not do so, he would be subject to discipline.

## II.    Analysis

Plaintiff claims that by denying him FMLA leave and disciplining him for missing his shift on August 20, defendant interfered with his rights under the FMLA.  The FMLA guarantees eligible employees up to 12 weeks of unpaid leave for serious health conditions and reinstatement to their former position or an equivalent position upon return from that leave.  See 29 U.S.C. §§ 2612(a)(1), 2614(a).  Under Section 2615(a)(1), an employer may not interfere with, restrain or deny the exercise of or the attempt to exercise any rights under the FMLA.  See 29 U.S.C. § 2615(a)(1).  To prevail on an FMLA interference claim, plaintiff must show that (1) he was entitled to FMLA leave; (2) defendant took adverse action which interfered with his right to take FMLA leave; and (3) defendant's action was related to the exercise or attempted exercise of his FMLA rights.  See Metzler v. Fed. Home Loan Bank of Topeka, 464 F.3d 1164, 1180 (10th Cir. 2006).

Here, the parties agree that missing work for a migraine headache (or treatment for a

migraine headache) would qualify plaintiff for FMLA leave and that defendant disciplined plaintiff because of his absence.  The only issue is whether plaintiff gave adequate notice of his need for leave.  The parties dispute who bears the burden of proof on this issue.  Defendant maintains that it falls under the first element of the prima facie case, i.e. that to show that he was entitled to FMLA leave, plaintiff must prove that he gave adequate notice.  See Defendant BNSF Railway Company's Reply Brief In Support Of Its Motion For Summary Judgment (Doc. #54) filed August 20, 2008 at 7-8.  Plaintiff maintains that lack of timely notice constitutes an affirmative defense.  See Plaintiff David Valdivia's Response And Supporting Brief In Opposition To Defendant BNSF Railway Company's Motion For Summary Judgment ("Plaintiff's Response") (Doc. #48) filed August 6, 2008 at 4-5.

In Bones v. Honeywell Int'l, Inc., 366 F.3d 869 (10th Cir. 2004), the Tenth Circuit held that improper notice under the FMLA is an issue which is separate from the analysis of a substantive FMLA interference claim, and arguably implied that lack of timely notice is an affirmative defense. See id. at 877 n.2.  In that case, defendant fired plaintiff because she missed three consecutive days. Plaintiff suffered elbow and stress problems, and had submitted a leave request form to the medical department.  Defendant's policy required that she also notify her supervisor, but she did not do so. See id. at 875.  Plaintiff claimed that by firing her for not following company policy, defendant interfered with her FMLA right to take medical leave.  See id. at 877.  The district court granted summary judgment in favor of defendant, finding that (1) plaintiff had not given proper notice under the FMLA; and (2) even if plaintiff had given proper FMLA notice, defendant would have dismissed her because she had violated company policy by failing to notify her supervisor in addition to the company medical department.  See id.  Plaintiff appealed only the first ruling, i.e. whether she had

given proper notice under the FMLA. The Tenth Circuit determined that it need not address the notice issue because the district court's alternate ruling would still stand. The Tenth Circuit stated that the analysis of improper notice under the FMLA is separate from a substantive interference claim and that plaintiff's appeal of the notice issue did not cure her failure to appeal the substantive ruling that defendant would have dismissed her for not following company policy. See id. at 877 n.2. The Tenth Circuit did not elaborate who bears the burden of proof regarding notice, see id., and it apparently has not addressed the issue in later cases. Because Tenth Circuit law on the issue is unclear, the Court gives plaintiff the benefit of the doubt and assumes without deciding that defendant bears the burden of proof on this issue. Therefore defendant must show that plaintiff did not give adequate notice under the FMLA. Compare Allender v. Ratheon Aircraft Co., 339 F. Supp.2d 1196, 1205 (D. Kan. 2004) (plaintiff cannot show right to FMLA leave without proof of adequate notice) with Henderson v. Whirlpool Corp., 17 F. Supp.2d 1238, 1246 (N. D. Okla. 1998) (improper notice is affirmative defense to FMLA interference claim). As a practical matter, however, on the facts of this case, the burden of proof does not affect the outcome of the Court's ruling.

Regarding notice under the FMLA, federal regulations differentiate "foreseeable" and "unforeseeable" leave. See 29 C.F.R. §§ 825.302 and 825.303.[4] Under Section 825.302, when the need for FMLA leave is foreseeable based on an expected birth, placement for adoption or foster care, or planned medical treatment for a serious health condition, employees must give 30 days advance notice. 29 C.F.R. § 825.302(a). In addition, with regard to any changes in dates of

---

[4]     The parties do not dispute the validity or applicability of the regulations. In Wilkins v. Packerware Corp., 260 Fed. Appx. 98, 104 (10th Cir. Jan. 7, 2008), the Tenth Circuit assumed without deciding that Section 825.303 was entitled to deference under Chevron U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837, 842-43 (1984).

scheduled leave, an employee must notify the employer "as soon as practicable." Id. The regulation

defines that phrase as follows:

> "As soon as practicable" means as soon as both possible and practical, taking into
> account all of the facts and circumstances in the individual case.  For foreseeable
> leave where it is not possible to give as much as 30 days notice, "as soon as
> practicable" ordinarily would mean at least verbal notification to the employer within
> one or two business days of when the need for leave becomes known to the
> employee.

29 C.F.R. § 825.302(b).

Regarding unforeseen need for FMLA leave, Section 825.303 provides that an employee

should give notice "as soon as practicable under the facts and circumstances of the particular case."

29 C.F.R. § 825.303(a).[5]  In this case, plaintiff cannot foresee when he will suffer a migraine

headache.  Furthermore, not all migraine headaches require him to miss work, and not all Maxalt

therapies cause him to sleep through all or part of his shift.  Therefore plaintiff's need for FMLA

leave on a particular date is not foreseeable 30 days – or even one or two days – in advance.

Accordingly, Section 825.303(a) applies and plaintiff was required to give notice of his need for

---

[5]        Section 825.303(a) states as follows:

(a) When the approximate timing of the need for leave is not foreseeable, an
employee should give notice to the employer of the need for FMLA leave as soon as
practicable under the facts and circumstances of the particular case.  It is expected
that an employee will give notice to the employer within no more than one or two
working days of learning of the need for leave, except in extraordinary circumstances
where such notice is not feasible.  In the case of a medical emergency requiring leave
because of an employee's own serious health condition or to care for a family
member with a serious health condition, written advance notice pursuant to an
employer's internal rules and procedures may not be required when FMLA leave is
involved.

29 C.F.R. § 825.303(a).

FMLA leave as soon as practicable under the facts and circumstances of the case.[6]

Plaintiff does not claim that he was able to work on August 20, and the record is clear that either the migraine or the Maxalt rendered him incapable of working on that day. The Court therefore finds that plaintiff needed FMLA leave on August 20. The Court further finds that plaintiff knew of his need for FMLA leave when he took his second dose of Maxalt at 2:00 p.m. on August 19 and that it was possible and practicable for him to give notice at that time. Under Section 825.302(a), the duty to give notice arises when the need for leave becomes "known" to the employee.[7] Plaintiff does not admit that as of 2:00 p.m. on August 19, he knew he would need FMLA leave on August 20. Lacking conclusive evidence on that issue, the Court must evaluate plaintiff's state of mind based on circumstantial evidence. See, e.g., Farmer v. Brennan, 511 U.S. 825, (1994) (knowledge may be inferred from circumstantial evidence); Wagner v. SFX Motor Sports, Inc., 460 F. Supp.2d 1263, 1272 (D. Kan. 2006) (same). Based on a preponderance of the evidence, including circumstantial evidence regarding plaintiff's knowledge and state of mind, the Court finds that at 2:00 p.m. on August 19, plaintiff knew that he would need leave on August 20. See, e.g., Blankenship v. Buchanan Gen. Hosp., 140 F. Supp.2d 668, 673 (W.D. Va. 2001) (employer must prove FMLA affirmative defense by preponderance of evidence).

Plaintiff contends that because of his medicine, he did not wake up to call before the start of his shift and he called as soon as practicable under the circumstances – after Patterson's phone

---

[6]     Regardless whether the need for leave is considered foreseeable or unforeseeable, the critical inquiry is whether the employee gave notice as soon as practicable under the individual circumstances of the case. See Spraggins v. Knauf Fiber Glass GmbH, Inc., 401 F. Supp.2d 1235, 1239 (M.D. Ala. 2005).

[7]     The Court finds that the Section 825.302(a) definition of "as soon as practical" applies equally to Section 825.303(a).

call woke him around 8:00 a.m. on Sunday morning.  See Plaintiff's Response (Doc. #48) at 5-6,

9.  This analysis begs the question.  Plaintiff knew that he was suffering from a migraine headache

and that Maxalt could cause him to sleep deeply for 24 to 27 hours and miss his alarm.  Despite this

knowledge, plaintiff took a second dose at 2:00 p.m., only 10 hours before his shift was to begin.

Plaintiff set his alarm and in the past, family members had wakened him when he slept through it.

Plaintiff made no arrangements for family members to waken him, however, and when he took the

second dose, he knew that even one dose could cause him to sleep through the alarm and miss his

shift.  At that time, plaintiff was on notice that he would need FMLA leave, and he should have

called in to work.  Such a call was clearly possible and practicable, taking into account all of the

facts and circumstances of the case.  At trial, plaintiff admitted that if he had called in to request

leave, then recovered in time to work, he could have reported to work as usual with no adverse

consequences.  Plaintiff's decision to play the odds and wait until the last minute to re-assess his

situation did not postpone his obligation to give notice as soon as practical and possible under the

FMLA.

Plaintiff does not claim that it was impossible or impracticable to give notice at 2:00 p.m.

on August 19.  Instead, he focuses on BNSF policy which only required him to call before the

beginning of his shift.  Plaintiff addresses the ten-hour difference between 2:00 p.m. and midnight

on August 19 by positing various scenarios under which he could have called in, i.e. the Maxalt did

not cause him to oversleep, the alarm woke him before midnight, family noticed that he had missed

the alarm and woke him to call, etc.  These arguments beg the question, however, because once

plaintiff knew of his need for leave, he had a duty to give FMLA notice as soon as practical and

possible under the circumstances.[8]  He did not do so.  Accordingly, defendant is entitled to judgment on the FMLA interference claim.

 **IT IS THEREFORE ORDERED** that the Clerk enter judgment in favor of defendant on all of plaintiff's claims.

 Dated this 12th day of February, 2009 at Kansas City, Kansas.

 s/ Kathryn H. Vratil
 Kathryn H. Vratil
 United States District Judge

---

 [8]  The Court rejects any inference that BNSF's generous call-in policy exonerates plaintiff from his duty under the FMLA to give notice as soon as practical and possible under the circumstances.  As the Spraggins court aptly stated:

> Without some notice of intended leave, employers cannot make reasonable arrangements to fill in for the employee who is absent on FMLA leave.  Surely Congress did not intend that employees could take FMLA leave willy-nilly, regardless as to whether they were able to give notice before their workday began . . . .

401 F. Supp.2d at 1239.  If the Court were to allow plaintiff to use BNSF policy as a sword in FMLA interference litigation, it could unintentionally discourage the very kind of dialogue and communication which the FMLA is intended to promote.